Curia, per Savage, Ch. J.
(after stating the case.) It is contended that judgment should be reversed, because,
1. There are two counts in the declaration, and the conclusion refers to but one count. This seems to be the fact; but the mistake is merely clerical, and an amendment would be granted; so that the judgment should not be reversed on that ground.
2. It is said that the affidavit of the president and cashier, made before a justice of the peace, should' not have been *admitted; as affidavits thus taken cannot be read in this court. The statute does not require the affidavit to be made before such an officer. It is a sufficient compliance with the act if made before any officer authorized to administer an oath.
3. It is urged that the plaintiffs below should have been required to prove the facts stated in the replication to the defendant’s second plea. To this, the plaintiffs answer, that the plea itself of nul tiel corporation is bad, and any *217 issues joined upon it aie immaterial; and that the plaintiff is bound to prove no more than he would upon the general issue. So the court below decided, and correctly. It is well setttled, that a corporation plaintiff must, upon a plea of the general issue, prove the existence of the corporation. [1] The plea of nul tiel corporation is bad, because it amounts to the general issues'[2] What did the plaintiffs prove ? They show the act of incorporation, by which such persons as should become stockholders in a certain mode pointed out by the act, should be a -corporation. The act did not make any set. of men a corporation ipso facto. There was something to be done. Books of subscription were to be opened ; stock was to -be subscribed for; that stock was to be distributed by the commisioners; and those persons to whom the stock should be thus distributed become stockholders. The stockholders then were to choose directors, and they a president and cashier.
The books of the bank were produced showing the election of the president and cashier. No notes were to be issued till the officers should file an affidavit, &c. That affidavit was made and filed by White and Wood, describing themselves as president and cashier.
The production of the books showing the election of the officers was, prima facie, sufficient to show that the previous requisition of the statute had been complied with, and that the corporation then had an existence; and the proof of the filing of the affidavit shows that the bank had authority to issue bills and discount notes. [3] Enough was proved, therefore, to entitle the .plaintiffs to recover upon their own showing.
It was said at the bar, that this court had decided, in the case of the Chenango Bank v. Noyes, that all which *was *218 necessary to prove the corporation, was to produce the charter in the printed statute book. The question there presented, as it was understood by the court, was,- whether the printed statute book, or an exemplificatian from the secretary of state, should be produced to prove the charter ; and we decided that the statute, as printed by the printer to the state, was sufficient.
The next question is, whether the defendant was discharged as endorser by virtue of the arrangement between the cashier and the. maker; According to the written agreement, the maker of the note stipulates, that if the plaintiffs will prosecute the endorser, and the debt cannot be collected, the maker will give security for the debt, payable in two years, on his receiving an assignment of the judgment.
In this court, the maker is considered the principal debt- or, and the endorser as a surety; and the surety is bound by the terms of his contract. If the creditor, by agreement with the principal debtor, without the consent of the surety, varies these terms by enlarging the time of performance, the surety is discharged; for he is injured, and his risk is increased. [1] (16 John. 72, 3.) Lord Eldon, in English v. Derby, (2 B. & P. 62,) says, as long as the holder is passive, all his remedies remain ; [2] and if any of the parties be discharged by the act of law, the holder is not prejudiced as to the others. But if a holder enter into an agreement with a prior endorser in the morning, not to sue him for a certain period of time, and then oblige a subsequent endorsee in the evening to pay the debt, the *219 latter must immediately resort to the very person for payment, to whom the holder has pledged his faith that he shall not be sued. Chancellor Kent, (2 John. Ch. R. 560,) gives the reason why the terms of the contract shall not be varied without the consent of the surety. He says, the surety is entitled to pay the debt when it becomes due ; or, he may call on- the creditor, by the aid of this court, (chancery,) to enforce his demand against the principal debtor. On paying the debt, he is entitled to the creditor’s place by substitution ; [1] and if the creditor, by agreement with the principal debtor, without the surety’s consent has disabled himself from suing, when he would otherwise have been entitled *to sue under the original contract, or has deprived the surety, on his paying the debt, from having immediate recourse to his principal, the contract is varied to his prejudice, and he is consequently discharged. [2] This is the true principle to be extracted from the cases.
Suppose then, the bank had authorized the cashier to take the writing which he did; does it contain any agreement not to sue Heath ? Certainly not, until the bank shall have failed to collect the demand from the endorser. It is strange, indeed, that the creditor should agree with the debtor to prosecute the surety first; but I do not see that the endorser is deprived of his remedy over against the debtor. He may pay the debt, and prosecute the maker immediately. There is no stipulation that the bank shall not prosecute the maker at the same time with the endorser; and time is not to be given unless the endorser is unable to pay. This agreement, therefore, does not prejudice the endorser.
*220 But it does not appear to have been authorized by the directors and I much doubt the power of the cashier to make such an agreement, without special authority.
Judgment affirmed.

 Williams v. The Bank of Michigan, 7 Wen. 539.

 When to a plea of nul tiel corporation, replication is made of the title of the act of incorporation (R. S.), such title must he set out with entire accuracy, as a variance in the statement would he good cause for demurrer if the act is a public one. Union Bank v. Dewey, 1 Sanf. S. C. Rep. 509.

 See also Utica Ins. Co. v. Tillman, 1 Wen. 554. The Same v. Cadwell, 3 id. 296.

 See Catskill Bank v. Messenger, ante, 37, 38, n. 1. Sprigg v. The Mount Pleasant Bank, 14 Peters 257. But to discharge the surety the agreement must be binding in l'aw, and founded on a sufficient consideration. Per Bronson, J., in Villas v. Jones, 1 Comst. 286. Bank United States v. Hatch, 6 Peters, 250. Creath's Adm'r. v. Sims, 5. How. U. S. Rep. 192. Bangs v. Strong, 7 Hill, 250. Mere voluntary indulgence to the principal debtor by the plaintiff in an execution, will not release the surety. id. Lenox v. Pruth, 3 Wheat. 520. United States v. Nichols, 12 id. 505. Schroppel v. Shaw, 5 Barb. S. C. Rep. 580.

 See also per Story, J. in M’Lemore v. Powell, 12 Wheat 554: 6 Cor. Rep. 634, 637.

 New York State Bank v. Fletcher, 5 Wen. 85. Bonney v. Seeley, 2 id. 481. Edward v. Traver, 6 Page, 521. Cuyler v. Ensworth, id. 32. Wilkes v. Harper, 2 Barb. Ch. Rep. 338. Matthews v. Aiken, 1 Comst. 595.

 Huffman v. Hulbert, 13 Wen. 375. Sprigg v. The Bank of Mount Pleasant, 14 Peters, 201. Gahn v. Niemcewiez’s ex’rs. 11 Wen. 312. Schroeppel v. Shaw, 5 Barb. S. C. Rep. 580. See further Dig. N. Y. Rep. by Hogan, title, Principal and Surety; also Am. Ch. Dg. by Waterman; title. same